NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200569-U

NOS. 4-20-0569, 4-20-0571 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 5, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* S.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Vermilion County |
| Petitioner-Appellee, | ) | No. 19JA9 |
| v.  (No. 4-20-0569) | ) | |
| Shane R., | ) | |
| Respondent-Appellant). | ) | |
| | ) | |
| *In re* T.R., a Minor | ) | |
| | ) | No. 19JA10 |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v.  (No. 4-20-0571) | ) | |
| Shane R., | ) | Honorable |
| | ) | Thomas M. O'Shaughnessy, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in finding respondent unfit to parent his minor children or
in terminating respondent's parental rights.

¶ 2         On September 17, 2020, the trial court found respondent, Shane R., unfit to parent

his minor children, S.R. (born November 25, 2015) and T.R. (born January 19, 2017). On October

30, 2020, the court terminated respondent's parental rights. Respondent appeals, arguing the trial

court erred both in finding that he was an unfit person and in finding termination of his parental

rights was in the best interests of S.R. and T.R. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          On January 25, 2019, the State filed a petition for adjudication of wardship, alleging S.R. and T.R. were neglected, as that term is defined under the Juvenile Court Act of 1987 (705 ILCS 405/2-3 (West 2018)), because their environment was injurious to their welfare as a result of their mother's substance abuse (*id.* § 2-3(1)(b)) and because their mother failed to provide them proper and necessary support, education, and other remedial care required for their welfare (*id.* § 2-3(1)(a)). The State additionally alleged it was in the best interests of the minors to be made wards of the court. A few days later, the trial court conducted a shelter care hearing and entered an order granting the Department of Children and Family Services (DCFS) temporary custody of the minors. Respondent was not present during the shelter care hearing.

¶ 5          On March 5, 2019, Lutheran Social Services of Illinois (LSSI), an agency operating under contract with DCFS, filed a family service plan. Under the plan, respondent was required to, among other things, stay in contact with the minors' caseworker and complete an integrated assessment, a substance abuse assessment, a parenting assessment, and a mental health evaluation.

¶ 6          In August 2019, respondent appeared before the trial court in this matter in the custody of the Vermilion County sheriff. During this proceeding, the court informed respondent of the allegations contained in the State's petition for adjudication of wardship, admonished him of his rights during termination proceedings, and appointed counsel to represent him.

¶ 7          In September 2019, the trial court conducted an adjudicatory hearing. Respondent did not appear at this proceeding, but his counsel was present. At the conclusion of the hearing, the court found S.R. and T.R. were neglected on both grounds alleged by the State. Subsequently,

the court conducted a dispositional hearing, which respondent also failed to attend. At the end of the dispositional hearing, the court entered an order finding respondent unfit, unable, and unwilling to parent S.R. and T.R., making the minors wards of the court, and granting custody and guardianship of the minors to DCFS. Additionally, the court ordered that respondent cooperate with DCFS and comply with the terms of the LSSI service plan.

¶ 8        On February 21, 2020, the State filed a petition to terminate respondent's parental rights. (We note the State also sought to terminate the parental rights of S.R. and T.R.'s mother and that, ultimately, her parental rights were terminated; however, she is not a party to this appeal, and we discuss the facts only as they relate to respondent.) In its petition, the State alleged respondent was an unfit parent in that he failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2018)). The State further alleged it was in the best interests of S.R. and T.R. that respondent's parental rights be terminated.

¶ 9        On September 17, 2020, the trial court conducted a fitness hearing, which respondent attended. During the hearing, the court took judicial notice that respondent had been incarcerated in the Vermilion County jail from August 5, 2019, until August 30, 2019, was incarcerated again on December 27, 2019, and remained incarcerated on the date of the fitness hearing. The State presented testimony from Tori Zook, S.R. and T.R.'s caseworker through LSSI. Zook testified her first communication with respondent had been in August 2019 when he appeared in court. At that time, respondent informed Zook he had been unaware until that day that S.R. and T.R. were in foster care. Also during that communication, Zook provided respondent her contact information and instructed him to notify her when he was released from jail, but respondent failed to do so. Zook testified she was unable to communicate with respondent after he was released

because she did not have any contact information for him. Zook's next communication with respondent was in January 2020 when she met with him in the Vermilion County jail and provided him materials to complete an integrated assessment. Although, in July 2020, respondent told Zook he had completed the integrated assessment, he never provided it to Zook, and due to restrictions implemented at the Vermilion County jail as a result of the coronavirus pandemic, Zook was unable to pick up the assessment from him. Zook additionally testified that under respondent's service plan, he was required to complete a substance abuse assessment, a parenting assessment, and a mental health evaluation. Although Zook acknowledged the services respondent was required to complete were not available while he was in jail, she also testified respondent could have completed some of the services between August and December 2019 when he was not incarcerated. According to Zook, since DCFS had been granted custody of the minors in January 2019, respondent had not had a visit with S.R. or T.R. However, he had spoken with them on the phone once while the minors were at the LSSI office and had sent them one letter. Zook further testified that "the only time [respondent had] participated in this case [was] while [he was] in jail" and that respondent's participation was "limited to just coming to court [and] talking to [her]."

¶ 10    Respondent testified on his own behalf. According to respondent, he first learned DCFS had removed S.R. and T.R. from their mother's custody at the August 2019 court proceeding. Between January 2019 and August 2019, he would "video chat" with S.R. and T.R. whenever their mother would call him with the children. Respondent testified that while he was incarcerated, he was unable to complete any of the recommended services, although he did complete the integrated assessment packet Zook had provided. Respondent also testified that, during his incarceration, he was not provided any opportunities for visits with S.R. or T.R.,

- 4 -

although he had one phone call with them and had written them a letter. Additionally, respondent testified no one from DCFS contacted him after he was released from jail and he was unable to reach out to them because the sheriff had taken away the slip of paper on which Zook had written her contact information. On cross-examination, respondent acknowledged "the only time [he had] ever show[ed] up for court in this case [was] when [he was] in custody."

¶ 11 At the end of the fitness hearing, the trial court found respondent unfit, as alleged by the State.

¶ 12 On October 30, 2020, the trial court conducted a best interest hearing. During the hearing, the State again called Zook to testify. According to Zook, S.R. and T.R. were placed with their maternal grandmother and her husband. S.R. was placed in that home in August 2019, and T.R. was placed there in October 2019. Zook testified S.R. and T.R. had "bonded" with their grandparents and were "safe and loved" in their grandparents' home. Zook further testified the grandparents ensured S.R. and T.R. received "ongoing services," such as therapy, and were willing to adopt S.R. and T.R. Zook concluded the grandparents' home was "the best placement for both of the children." Additionally, Zook testified respondent still had not had any visits with S.R. and T.R. and had not communicated with the minors except for the phone call and the letter about which she testified during the fitness hearing.

¶ 13 Respondent again testified on his own behalf. According to respondent, he had never been offered visits with S.R. and T.R., had never been offered any services apart from the integrated assessment packet, and was never informed "what sorts of things were expected from [him] from DCFS." Respondent further testified that he would have participated in visits with S.R. and T.R. if any had been offered, his children were important to him, and he "love[d] them to

death." Respondent concluded he was willing to do "what [he could] to be able to be in [S.R. and T.R.'s] lives in whatever way [he could]."

¶ 14    At the end of the best interest hearing, the trial court found termination of respondent's parental rights was in the best interests of S.R. and T.R.

¶ 15    This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17    The Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2018)) "delineates a two-step process in seeking termination of parental rights involuntarily." *In re J.L.*, 236 Ill. 2d 329, 337, 924 N.E.2d 961, 966 (2010). First, the court conducts a fitness hearing at which it must determine, by "clear and convincing evidence, that [the] parent is an unfit person as defined in Section 1 of the Adoption Act [(750 ILCS 50/1 (West 2018))]." 705 ILCS 405/2-29(2) (West 2018). Second, the court holds a separate hearing at which it must find termination of the parent's rights is in the "best interest" of the minor. *Id.*

¶ 18    Respondent first contends the trial court erred in finding that he was an unfit person under section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2018)). As respondent correctly notes, a court's finding of parental unfitness "will not be disturbed on appeal unless it is against the manifest weight of the evidence." *In re M.C.*, 2018 IL App (4th) 180144, ¶ 22, 110 N.E.3d 346. A court's finding that a parent is an unfit person is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." (Internal quotation marks omitted.) *In re M.I.*, 2016 IL 120232, ¶ 21, 77 N.E.3d 69.

¶ 19    Under section 1(D)(b) of the Adoption Act, a parent may be found to be an unfit person by "[f]ail[ing] to maintain a reasonable degree of interest, concern or responsibility as to

[his] child's welfare." 750 ILCS 50/1(D)(b) (West 2018). Because the language of section 1(D)(b) is in the disjunctive, a parent may be found to be unfit by failing to "maintain either interest, or concern, or responsibility; proof of all three is not required." *In re Richard H.*, 376 Ill. App. 3d 162, 166, 875 N.E.2d 1198, 1202 (2007).

¶ 20    "In determining whether a parent has shown a reasonable degree of interest, concern, or responsibility for a minor's welfare, a court considers the parent's efforts to visit and maintain contact with the child as well as other indicia, such as inquiries into the child's welfare." *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31, 43 N.E.3d 139. A court may also consider the parent's completion of his service plan. *Id.* The parent's conduct must be examined "in the context of the circumstances in which that conduct occurred." *In re Adoption of Syck*, 138 Ill. 2d 255, 278, 562 N.E.2d 174, 185 (1990). If a parent is unable to participate in personal visits with his child, the court may consider his "letters, telephone calls, and gifts to the child or those caring for the child ***, depending upon the content, tone, and frequency of those contacts under the circumstances." *Id.* at 279. Importantly, the court must "examine the parent's efforts to communicate with and show interest in the child, not the success of those efforts." *Id.* However, "a parent is not fit merely because [he] has demonstrated some interest or affection toward [his] child; rather, [his] interest, concern[,] and responsibility must be reasonable." *In re Jaron Z.*, 348 Ill. App. 3d 239, 259, 810 N.E.2d 108, 125 (2004).

¶ 21    Here, the evidence presented during the fitness hearing was sufficient to support the trial court's finding that respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to S.R. and T.R.'s welfare. Respondent did not comply with the service plan: he failed to complete any requirements of that plan or to even engage in any recommended

services. Additionally, respondent was so uninformed about his children's welfare that he did not know DCFS had been granted custody of S.R. and T.R. until seven months after the fact. Respondent was so disinterested in court proceedings related to S.R. and T.R. that he failed to appear for hearings unless he was in custody. Finally, the evidence at the fitness hearing showed that between August 2019 and the fitness hearing, respondent only communicated with S.R. and T.R. twice, once by letter and once on the phone. Nonetheless, respondent argues his failure to participate in visits with S.R. and T.R. and his failure to complete any services should be excused because he was incarcerated. However, the record shows respondent was not incarcerated between August 30, 2019, and December 27, 2019, and during that time failed to contact S.R. and T.R.'s caseworker to inform her he had been released, to obtain a referral for services, or to request visits with the children. In light of this evidence, the court's finding that respondent was an unfit person was not against the manifest weight of the evidence.

¶ 22   Respondent also contends the trial court erred in finding termination of his parental rights was in the best interest of S.R. and of T.R. As with the court's finding of unfitness, "[w]e will not reverse the trial court's best-interest determination unless it was against the manifest weight of the evidence." *In re Jay H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 291 (2009). The court's decision is against the manifest weight of the evidence "only if the facts clearly demonstrate that the court should have reached the opposite result." *Id.*

¶ 23   During the best interest stage of termination proceedings, "the focus is properly placed on the child, not on the conduct of the parents." *In re T.A.*, 359 Ill. App. 3d 953, 959, 835 N.E.2d 908, 912 (2005). "Although a parent's conduct may be considered at [the best interest] stage, it is but one of many factors that the court considers in determining what is in the child's

best interest." *Id.* Section 1-3 of the Juvenile Court Act of 1987 lists other factors the trial court must consider in determining whether termination of a parent's rights is in the minor's best interest. 705 ILCS 405/1-3(4.05) (West 2018). Those factors, which must be considered in the context of the child's age and developmental needs, are: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence; (8) the uniqueness of every family and child; (9) the risks associated with substitute care; and (10) the preferences of the persons available to care for the child. *Id.*

¶ 24    The evidence presented at the best interest hearing was sufficient for the trial court to determine that termination of respondent's parental rights was in the best interests of S.R. and T.R. The minors' caseworker testified S.R. and T.R. had been placed together in their grandparents' home since October 2019, were "safe and loved" there, and had become "bonded" with their grandparents. S.R. and T.R.'s grandparents were caring for the minors "appropriately," including by ensuring they received necessary therapy services. Additionally, S.R. and T.R.'s grandparents were willing to provide the minors permanence through adoption. By contrast, respondent had not visited S.R. and T.R. since DCFS had taken custody of the minors and only communicated with the minors twice since August 2019. Accordingly, it cannot be said the trial court's finding that the best interests of S.R. and T.R. would be served by termination of respondent's parental rights was against the manifest weight of the evidence.

¶ 25                              III. CONCLUSION

¶ 26    For the reasons stated, we affirm the trial court's judgment.

¶ 27    Affirmed.